IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:21-MJ-1034-RJ

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANDRES R. VEGA,<br><br>Defendant. | JUDGMENT |

This matter comes before the court for ruling following Defendant's bench trial. For the reasons stated below, the court finds Defendant guilty.

## I. PROCEDURAL BACKGROUND

On March 19, 2021, the United States charged Defendant Andres R. Vega ("Defendant" or "Mr. Vega") by violation notice with violating 38 C.F.R. § 1.218(b)(11). [DE-1]. According to the violation notice, on February 19, 2021, Defendant's conduct created a loud, boisterous and unusual noise or prevented the normal operation at the Greenville Veterans Affairs Health Care Center ("the Hospital"), a Veterans Administration facility located in the Eastern District of North Carolina.

Defendant appeared in court on April 14, 2021 pursuant to a summons, for a hearing in accordance with Fed. R. Crim. P. 58. Following his initial appearance, proceeding pro se, Defendant was arraigned and entered a plea of not guilty to the violation notice. The court conducted a bench trial following Defendant's plea of not guilty. At trial the United States called Officer Ryan Adkins ("Officer Adkins") of the Greenville Police Department to testify. Defendant testified in his defense.

## II. STATEMENT OF THE FACTS[1]

### 1. Officer Adkins's Testimony

Officer Adkins testified that on February 19, 2021, he was stationed at the Hospital. The Hospital also employs Covid screener personnel, whose job includes asking people entering the facility if they have Covid symptoms and ensuring that everyone entering the Hospital wears a mask. The Hospital is a federal facility, and at the time of the incident, an executive order required everyone inside the hospital to wear masks.[2]

At 12:45 p.m., Officer Adkins and another officer were notified by a Covid screener in the pharmacy lobby that a person had entered the Hospital but refused to wear a mask. Officer Adkins made contact with the person near the pharmacy window, identified him as Mr. Vega, and asked if he had a mask. Mr. Vega looked at Officer Adkins but did not respond. Officer Adkins asked again if Mr. Vega had a mask and would be willing to wear it. Mr. Vega responded that he was not willing to wear a mask.

Officer Adkins told Mr. Vega that he would have to leave the Hospital if he did not wear a mask. Mr. Vega said he did not believe in Covid-19 and had medical and religious exemptions to the mask mandate, so he agreed to leave the Hospital. From the video evidence, it appears that other individuals were in the pharmacy lobby during this exchange waiting to conduct business there, and they observed the exchange between Mr. Vega and Officer Adkins.

---

[1] The facts summarized here are drawn from the testimony of Officer Adkins and Mr. Vega, and video evidence from the surveillance cameras at the Hospital, recordings which were submitted by the Government and Defendant and entered into evidence without objection. The video footage shows the entrance of the hospital, the hallway, and the pharmacy lobby while the relevant events took place.

[2] *See* Exec. Order No. 13991, 86 FR 7045 (Jan. 20, 2021) ("Accordingly, to protect the Federal workforce and individuals interacting with the Federal workforce, and to ensure the continuity of Government services and activities, on-duty or on-site Federal employees, on-site Federal contractors, and other individuals in Federal buildings and on Federal lands should all wear masks, maintain physical distance, and adhere to other public health measures, as provided in CDC guidelines.").

2

The officers escorted Mr. Vega out of the pharmacy area, and as they neared the exit doors, according to Officer Adkins Mr. Vega became loud and boisterous. Officer Adkins testified that Mr. Vega's physical demeanor did not change, but that he raised his voice, and that Mr. Vega distracted the Covid screeners and disrupted the normal flow of operations such that other veterans stopped what they were doing to watch what was happening. The video evidence shows that some bystanders in the general area turned their heads to observe the incident, but it is not clear from the video whether the bystanders stopped what they were doing. Officer Adkins testified that Mr. Vega called him a "fat ass" and a "lazy piece of shit." Two witnesses reported to Officer Adkins that they were concerned because of their medical issues and Mr. Vega's refusal to wear a mask, and they were also worried that Mr. Vega had a firearm.[3]

Officer Adkins testified that although Mr. Vega had initially agreed to leave, when he became loud and boisterous as they approached the door, Officer Adkins decided to escort Mr. Vega to his office to discuss his behavior. Mr. Vega was still attempting to leave, so Officer Adkins had to guide him to his office, which caused further disruption. Officer Adkins took Mr. Vega to the officers' administrative office to take his information and issue the violation notice. In the office, Mr. Vega used more foul language with Officer Adkins. According to Officer Adkins, Mr. Vega repeated that he had a religious exemption from the mask mandate and said that Officer Adkins was the "type of cop to get shot by people." During the discussion, a patient advocate spoke to Mr. Vega, who ultimately agreed to wear a mask and go about his business in the Hospital.

On cross examination by Mr. Vega, Officer Adkins testified that Mr. Vega agreed to leave the hospital and that he walked towards the exit. Within twenty feet of leaving the pharmacy, Mr.

---

[3] Defendant did not object to the witness statements as hearsay, but pursuant to Fed. R. Evid. 801–07, the statements would be inadmissible and are therefore not considered by the court.

3

Vega's volume escalated to a point where other individuals stopped what they were doing to watch the exchange. Officer Adkins testified that veterans standing in line at the pharmacy and at the entrance to the building stopped their normal course of business because of the incident.

2.  **The Video Evidence**

Government's Exhibit 1 is video footage from the VA security cameras. The video recording does not contain audio, and Officer Adkins testified that Mr. Vega's primary disruptive conduct was the verbal altercation, not a physical altercation. The video depicts Mr. Vega enter the Hospital, speak to a Covid screener, accept a mask, walk towards the pharmacy window, and put the mask in his back pocket instead of wearing it. The Covid screener appears to alert another person that Mr. Vega was not wearing the mask, and that person appears to inform the officers. Next, the officers are seen speaking with Mr. Vega at the pharmacy area, escorting him towards the exit, and then changing course to their office. The video shows that several people in the pharmacy area watched the incident occur. Government's Exhibits 2 and 3 are Officer Adkins's report and supplemental report containing witness statements.

3.  **Mr. Vega's Testimony**

Mr. Vega testified that the disruption—the actions which caused others in the building to stop what they were doing and observe the incident—was the officers' actions in escorting him out of the building, not his own speech. Mr. Vega played a video depicting the same footage as Government's Exhibit 1 but from a different vantage point. Mr. Vega testified that he took the mask at the entrance because he was willing to wear the mask if it was recommended by a medical professional, but that he wanted to talk to a doctor first about whether he should wear a mask. The video presented by Mr. Vega shows that several people turned their heads or shifted their positions to observe the encounter between Officer Adkins and Mr. Vega, but it was not clear to the court

4

from the video that their business was interrupted; it appears that they simply watched what was happening for several seconds. The video shows that while Officer Adkins and Mr. Vega were in front of the exit door, Mr. Vega gestured to the door to indicate that he wanted to leave, and the officers grabbed him to guide him to their office.

Mr. Vega testified that he was never boisterous, never yelled, and never disrupted the flow of the building. When Mr. Vega was asked to wear a mask or leave the Hospital, he tried to leave. Mr. Vega testified that any disruption was not his doing; people were sitting in the Hospital with nothing to do, and when they saw two officers escorting someone out, it was natural for them to want to observe.

On cross examination by the Government, Mr. Vega testified that the Covid screener asked him take a mask, and he did so. Mr. Vega testified further that he knew that the VA required people to wear masks, but he wanted to get a medical recommendation from a doctor as to whether he should wear one. Mr. Vega did not remember calling the officer foul names while at the pharmacy window, but he admitted to calling Officer Adkins names while in the administrative office.

### III. DISCUSSION

The violation notice issued in this case alleges a violation of 38 C.F.R. § 1.218(b)(11), which criminalizes "[d]isorderly conduct which creates loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of a service or operation of the facility" in a VA facility. [DE-1]. The substantive offense is found in 38 C.F.R. § 1.218(a)(5), which prohibits:

> Conduct on property which creates loud or unusual noise; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of

5

> official duties by Government employees; which prevents one from obtaining medical or other services provided on the property in a timely manner; or the use of loud, abusive, or otherwise improper language; or unwarranted loitering, sleeping, or assembly[.]

38 C.F.R. § 1.218(a)(5). Although Mr. Vega was charged under the penalty subsection of the regulation rather than the substantive offense subsection, other courts have held that citation to § 1.218(b)(11) in the charging document rather than § 1.218(a)(5) is immaterial because the language in the two sections is nearly identical. *See United States v. Williams*, 892 F.2d 1044 (6th Cir. 1990) (holding that when the defendant was charged under § 1.218(b)(11) rather than § 1.218(a)(5), "the language of the penalty section is similar to that of the substantive offense section and both sections explicitly prohibit the conduct for which Williams was convicted. Thus, we cannot say that because the government failed to charge Williams under the substantive offense section, Williams was not charged with a convictable offense."); *United States v. Puch*, No. 20-3265, 2021 WL 867038, at *3 (6th Cir. Jan. 21, 2021) (holding that any argument that dismissal is warranted because the defendant was charged under § 1.218(b)(11) rather than § 1.218(a)(5) is "foreclosed by precedent").

Section 1.218(b)(11) is written in the disjunctive, so there are three ways a person may be found to have violated the regulation: (1) disorderly conduct which creates loud, boisterous, or unusual noise; (2) disorderly conduct which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways; or (3) disorderly conduct which tends to impede or prevent the normal operation of a service or operation of the facility. *See United States v. DeGarza*, 468 F. Supp. 3d 794, 798 (W.D. Tex. 2020) ("The Court treats this standard as disjunctive: the government need not prove multiple or all of 38 C.F.R. § 1.218(a)(5)'s enumerated elements to obtain a conviction").

First, the evidence is conflicting as to whether Mr. Vega was loud and boisterous. The video evidence did not include an audio recording of the encounter between Mr. Vega and the officers. Officer Adkins testified that Mr. Vega raised his voice while walking towards the exit, and Mr. Vega testified that he never raised his voice. Neither witness appeared less than credible; accordingly, the Government has not shown beyond a reasonable doubt that Mr. Vega was loud and boisterous.

Second, the evidence fails to show beyond a reasonable doubt that Mr. Vega obstructed the normal use of the entrance, exit, or corridors. The video evidence shows people freely moving about the hospital, and no one appears to have been obstructed.

Third, however, Mr. Vega's conduct prevented the normal operation of the Hospital. Mr. Vega was informed by the Covid screener at the Hospital entrance that he needed to wear a mask pursuant to the rules of the Hospital and an executive order. Indeed, Mr. Vega availed himself to take a mask, placed it in his pocket, and walked into the Hospital without wearing it. By failing to comply with the Hospital rules and the executive order requiring a mask in federal facilities, Mr. Vega diverted the Covid screener from her duties. She left her desk to alert someone at another desk, who then left his station to inform police. The officers left their office to tell Mr. Vega he had to either wear a mask or leave, and the officers followed Mr. Vega to the exit to ensure that he did leave.

Mr. Vega argued that it was the officers' conduct, not his own, which caused a disruption, for onlookers were likely to be distracted by two police officers escorting a person out of the building. The Eleventh Circuit addressed a similar argument in *United States v. Shepard*, where the defendant argued that she should not be responsible for distracting officers from their normal duties because the VA police needlessly called for backup. 362 F. App'x 107, 112–13 (11th Cir.

2010). The Eleventh Circuit held:

> While Shepard argues that it was [Lieutenant] Hawkins who impeded the duties of other police officers by unnecessarily directing all officers to report to phlebotomy lab, this argument does not change the result in this case. By resisting Hawkins's attempt to investigate whether she had taken unauthorized photographs, Shepard impeded the official duties of at least one VA employee. Even if it were unreasonable for Hawkins to call for the assistance of all officers, it appears that Shepard's resistance caused it to become necessary for him to divert at least one additional officer away from his official duties.

*Id.* Likewise, here, by resisting the Covid screener's attempt to ensure that everyone entering the building was wearing a mask, Mr. Vega impeded the official duties of at least one other VA employee, for it was necessary for the Covid screener to call an officer to speak to Mr. Vega about the mask mandate as her own conversation with him was ineffective. Mr. Vega's conduct in walking into the pharmacy area without wearing a mask detracted the Covid screener and the two officers from their normal duties; accordingly, it was disorderly conduct which prevented the normal operation of the hospital, and Mr. Vega is guilty of the violation notice.

## III. CONCLUSION

For the reasons stated herein, the court finds Defendant guilty of the offense of disorderly conduct in violation of 38 C.F.R. § 1.218(b)(11).

Defendant shall appear at the United States District Court in Wilmington, North Carolina on **Wednesday, June 16, 2021 at 10:00 a.m.** for his sentencing hearing.

So ordered, the 26th day of May, 2021.

Robert B. Jones, Jr.
United States Magistrate Judge